IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

AFTON MCKENZIE,

                          Plaintiff,

   v.                                                    OPINION & ORDER

SENECA FOODS CORPORATION,                                    16-cv-49-jdp

                          Defendant.

---

Plaintiff Afton McKenzie, having been diagnosed with Lyme disease, asked her employer, defendant Seneca Foods Corporation, to approve her medical leave under the Family and Medical Leave Act (FMLA), 28 U.S.C. § 2601 *et seq.* Although Seneca approved the vast majority of McKenzie's requested medical leave, it determined that McKenzie did not follow the proper procedures for requesting approval on two days. Because those two unexcused absences put McKenzie over the limit set by Seneca's attendance policy, Seneca fired McKenzie. McKenzie now brings suit against Seneca, alleging that it interfered with her FMLA rights, retaliated against her for requesting FMLA leave, and violated the Americans with Disability Act (ADA), 42 U.S.C. § 12101 *et seq.*, by failing to accommodate McKenzie's disability.

Seneca moves for summary judgment on all claims. Dkt. 8. The court will grant summary judgment to Seneca on the FMLA interference and ADA claims. But because McKenzie adduces evidence from which a reasonable juror could infer that Seneca fired her in retaliation for her use of FMLA leave, the court will deny Seneca's motion on this claim, and that claim will have to be resolved at trial.

UNDISPUTED FACTS

The following facts are undisputed, except where noted.

McKenzie began working at Seneca's can-manufacturing facility in Baraboo, Wisconsin, in 2009. Seneca and its employees are covered by the FMLA, under which eligible employees are entitled to up to 12 workweeks of leave during a 12-month period if the employee has a serious health condition that renders her unable to perform the functions of her position or if the employee must care for her spouse, child, or parent with a serious health condition. 29 U.S.C. § 2612(a)(1).

Seneca had policies governing employee attendance and the taking of FMLA leave. The attendance policy is basically a point system that leads to progressive discipline. Employees are assessed a point for each unapproved absence. When an employee accrues 5 points within the previous 12 "worked months," a human resource representative will speak with the employee and place a memo documenting the conversation in the employee's file. Dkt. 21-1, at 1. Upon accruing 7 points within the previous 12 worked months, the employee will receive a verbal disciplinary notice. Upon accruing 8 points, the employee will receive a written disciplinary notice. Upon accruing 9 points, the employee will be terminated. *Id.* The policy provides one exception:

> Extenuating circumstances, such as but not limited to, continuing physical illness requirement weekly/monthly treatments, will be reviewed on an individual basis and may be exempt from the attendance policy with prior approval from the Plant Manager.

*Id.*

Seneca's FMLA leave policy requires that Seneca employees provide notice both to Seneca and its third-party FMLA administrator, Unum. Under the policy, an employee must

provide notice at least 30 days in advance "[w]hen the need for the leave is foreseeable." Dkt. 5-1, at 11. If an employee discovers the need for FMLA leave less than 30 days in advance, he or she "must provide notice of the need for the leave either the same day or the next business day." *Id.* If "the need for FMLA leave is not foreseeable, the employee must comply with [Seneca's] usual and customary notice and procedural requirements for requesting leave and being absent for unusual circumstances." *Id.* Seneca's written policy does not describe its "usual and customary notice and procedural requirements for requesting leave," but the parties agree that Seneca usually required employees to notify Seneca and Unum of their request for FMLA leave the same day that they take leave or the next business day. The parties also agree that "Unum makes the ultimate determination whether an employee is certified for purposes of taking FMLA leave." Dkt. 19, ¶ 60.

While working at Seneca, McKenzie requested, and Seneca generally approved, excused time off under the FMLA so that she could care for her mother, who had a serious medical condition. In February 2013, McKenzie was diagnosed with Lyme disease. Her symptoms included fatigue, headaches, muscle and joint pain, numbness, dizziness, tremors, weakness, depression, and anxiety. On March 15, 2013, McKenzie gave Seneca a note from her doctor explaining that she had been diagnosed with Lyme disease and that it would sometimes prevent her from working. Seneca accepted that McKenzie's Lyme disease was a serious medical condition, and it regularly approved her requests for intermittent FMLA leave several times per month.

But McKenzie did not always comply with Seneca's notice requirements. She sometimes notified Unum of her request for FMLA leave days, weeks, or months after her absence. Although this practice did not comply with Seneca's FMLA procedural

requirements, Unum retroactively approved McKenzie's requests for FMLA leave, and at least at first Seneca did not assess points for McKenzie's retroactively approved FMLA leave. For example, although Seneca initially assessed McKenzie a point for her absence on August 6, 2013, it reclassified that absence to approved FMLA leave after McKenzie notified Unum of that date in October.

But beginning in late summer, 2013, McKenzie had a spate of absences, and Seneca more stringently applied its FMLA leave policy to McKenzie. On August 25, McKenzie called Seneca and explained that she was taking FMLA leave, but she did not notify Unum. Seneca assessed McKenzie a point. On September 3, McKenzie left early—without approval—and was assessed half a point. On September 7, McKenzie received a written disciplinary notice because she had accumulated 8 points within the past 12 months of work.[1] On September 25, McKenzie again called Seneca and explained that she was taking FMLA leave but did not notify Unum. Seneca assessed McKenzie another point. On October 18, Seneca assessed McKenzie half a point for leaving early. On October 28, McKenzie called Seneca and explained that she would be absent on personal business; Seneca assessed McKenzie another point. On December 13, McKenzie once again called Seneca and explained that she was taking FMLA leave but did not notify Unum. Seneca assessed McKenzie another point.

Then things quieted down, and McKenzie was not absent, for any reason, for more than a month. On January 21, 2014, McKenzie took approved FMLA leave. Three days later, Seneca told McKenzie that her absences on September 25 and December 13 had not been

---

[1] Most of those points were for unexcused absences for which McKenzie never tried to seek approval for FMLA leave. McKenzie contends that Seneca miscalculated the number of points she had accrued by September 7, even after accounting for the later reclassification. But the court need not resolve this factual dispute because the September 7 warning is not at issue in this case, and the number of points accrued by September 7 is immaterial.

approved for FMLA leave because she failed to notify Unum. McKenzie told Seneca that she would seek retroactive approval from Unum for those absences. The next day, January 25, 2014, McKenzie took approved FMLA leave. Three days later, on January 28, Seneca managers met with McKenzie, explained that she had accumulated 9.5 points, and suspended her pending further investigation of her absences. After this meeting, McKenzie contacted Unum to seek retroactive approval of FMLA leave for her August 25, September 25, October 28, and December 13 absences.

On January 29, Unum notified Seneca that it approved FMLA leave for McKenzie's August 25 and September 25 absences. Despite Unum's approval, Seneca did not reclassify McKenzie's absences on these dates. This was highly unusual: Seneca's human resources administrator could not remember another time in the past six years when Seneca denied FMLA leave to an employee after Unum approved it.

Seneca fired McKenzie on January 31 because she had accumulated 9.5 points in a 12-month period.

ANALYSIS

Seneca moves for summary judgment on the grounds that it lawfully terminated McKenzie according to its attendance and FMLA policies.

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the opposing

party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* (quoting Fed. R. Civ. P. 56(e)). A party may not simply rely on the allegations in its pleadings to create such a dispute, but must "demonstrate that the record, taken as a whole, could permit a rational finder of fact to rule in [its] favor." *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996).

## A.  FMLA interference claim

The FMLA provides that employers may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Act]." 29 U.S.C. § 2615(a)(1). McKenzie claims that Seneca interfered with her FMLA rights by firing her for taking time off as authorized under the FMLA.

To prove an FMLA interference claim, an employee must show that: (1) she was eligible for the FMLA's protections; (2) the employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) the employer denied her FMLA benefits to which she was entitled. *Brown v. Auto. Components Holdings, LLC*, 622 F.3d 685, 689 (7th Cir. 2010). The parties agree that Seneca is an employer, that McKenzie was an eligible employee, and that Lyme disease is a serious health condition under the FMLA, such that McKenzie was entitled to take FMLA leave. They also agree that Seneca fired McKenzie because of her absences. Thus, McKenzie's interference claim turns on whether she provided sufficient notice of her intent to take leave.

What constitutes sufficient notice is substantially left to the employer. "FMLA regulations specifically provide that an employer may require employees 'to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstance.'" *Id.* at 690 (quoting 29 C.F.R. § 825.302(d)). An employee's

failure to comply with an employer's leave policies and procedures is a sufficient ground for denying FMLA leave requests. *See* § 825.302(d); *Righi v. SMC Corp.*, 632 F.3d 404, 411 (7th Cir. 2011).

McKenzie does not dispute that Seneca usually required employees to notify both Seneca and Unum of their request for FMLA leave the same day or the next business day (if the need for leave was not foreseeable). Nor does she dispute that she did not follow that procedure on August 25 and September 25, 2013; she admits that she did not notify Unum of her request for FMLA leave on those dates until January 29, 2014. Although *Unum* eventually approved McKenzie's request for FMLA leave, *Seneca* assessed McKenzie a point for each absence because she failed to follow its procedural requirements for FMLA leave. As a result, Seneca fired McKenzie for violating its attendance policy, under which she accumulated enough points to support termination.

McKenzie contends that an employer cannot deny FMLA leave due to the employee's failure to follow internal policies "so long as the employee has given at least verbal notice of the leave in a timely manner." Dkt. 13, at 25. But McKenzie's argument is foreclosed by a long line of Seventh Circuit decisions holding that employers do not interfere with their employees' FMLA rights when they require compliance with their internal policies even if their policies impose stricter notice requirements than the FMLA itself. *See Brown*, 622 F.3d at 687 (finding no interference when employer required employee to report to work, return a specific form, or obtain a "call-in code number" over the phone within five days of her initial return-to-work date); *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 710 (7th Cir. 2002) (finding no interference when employer required employee to notify employer of her inability to work each day of her FMLA leave); *Gilliam v. United Parcel Serv., Inc.*, 233 F.3d 969,

971-72 (7th Cir. 2000) (finding no interference when employer required employee to provide his supervisor with a return-to-work date by the third working day of FMLA leave); *see also Martinez v. Harley-Davidson, Inc.*, No. 10-cv-1081, 2012 WL 3881615, at \*18 (E.D. Wis. Sept. 6, 2012), ("The controlling case law in this circuit allows an employer to rely upon its internal procedures to report FMLA absences in accordance with their general notice policies as long as compliance is possible."). Likewise, Seneca's policy requiring employees to notify two individuals—someone at Seneca and someone at Unum—of their FMLA leave request is a reasonable requirement that does not interfere with employees' FMLA rights.

Against this line of Seventh Circuit cases, McKenzie relies on two authorities. First, she cites 29 C.F.R. § 825.302(d), a regulation concerning notice requirements for foreseeable FMLA leave. But § 825.302(d) specifically states that an employer *can* deny FMLA leave when the employee fails to follow internal policies, at least in most circumstances:

> An employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances. . . . Where an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied. However, FMLA-protected leave may not be delayed or denied where the employer's policy requires notice to be given sooner than set forth in paragraph (a) of this section and the employee provides timely notice as set forth in paragraph (a) of this section.

Paragraph (a) of the section requires that notice be given "as soon as practicable." So § 825.302(d) allows employers to deny FMLA leave when the employee does not follow the employer's usual and customary notice and procedural requirements unless (1) there are unusual circumstances or (2) the employer requires notice sooner than is practicable and the employee did provide notice as soon as practicable. This provision puts some limits on the

8

employer's own notice policies: it would not allow an employer to deny FMLA leave if its policies ignored unusual circumstances or required notice *sooner than was practicable*. But this does not help McKenzie, because she does not allege that she faced any unusual circumstances or that it was not practicable to notify Unum of her request for FMLA leave at the same time that she notified Seneca. Rather than support her argument, § 825.302(d) confirms that Seneca did not interfere with McKenzie's rights when it denied her request for FMLA leave because of her failure to comply with its procedural requirements.

Second, McKenzie cites a 1999 opinion letter from the U.S. Department of Labor Wage and Hour Division, which concerns employers' ability to impose internal policies and procedural requirements for requesting FMLA leave:

> [The] FMLA's notification procedures . . . provide that an employer may not impose stricter notification requirements than those required under the Act (§ 825.302(g)) and that FMLA leave cannot be denied or delayed if the employee provides timely notice (under FMLA), but did not follow the company's internal procedures for requesting leave.
>
> . . . . We would construe an employer's attendance control policies that require more stringent notification requirements than those already established in the FMLA regulations and which would assign points to FMLA leave takers who failed to follow the company's more stringent notice policies to be an attempt to interfere with or to discourage an employee's attempt to exercise rights under the FMLA to take leave for a qualifying reason. We would view these policies to be in direct violation of the Act and regulations.

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 2 (Jan. 15, 1999),[2] *superseded on other grounds by* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (Jan. 6, 2009). In other words, an employer cannot deny leave to an employee who provides timely notice

---

[2] *Available at* https://www.dol.gov/whd/opinion/FMLA/prior2002/FMLA-101.pdf.

under the FMLA but does not provide timely notice under the employer's more stringent requirements. But this letter runs counter to both Seventh Circuit precedent and the current version of § 825.302(d) as discussed above. The letter is therefore unpersuasive and not entitled to any deference. *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (Opinion letters "are 'entitled to respect' . . . but only to the extent that [those] interpretations have the 'power to persuade.'" (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944))). The court must follow Seventh Circuit precedent holding that an employer can deny FMLA leave to an employee who did not follow the employer's internal procedural requirements for requesting FMLA leave.

McKenzie offers one last argument: that "Seneca interfered with her use of protected leave when it miscalculated the number of absences she accrued." Dkt. 13, at 25-26. But as the Seventh Circuit has made clear, "the details of a company's internal leave procedures is a 'subject for a labor arbitrator, not a court,'" at least when it comes to the analysis of an FMLA interference claim. *Brown*, 622 F.3d at 690, n.5 (quoting *Gilliam*, 233 F.3d at 971)). The question here is whether Seneca's denial of McKenzie's request for FMLA leave was allowed under the FMLA; the court has determined that it was. Whether Seneca properly assessed and tabulated points for McKenzie's unexcused attendance problems is not an FMLA issue.

The court will grant summary judgment in favor of Seneca on McKenzie's FMLA interference claim.

## B.  FMLA retaliation claim

McKenzie also claims that Seneca retaliated against her for exercising her rights under the FMLA, in violation of 29 U.S.C. § 2615(a) and (b). The FMLA affords protection to

10

employees who suffer adverse employment actions because they have exercised rights protected by the Act. *Lewis v. Sch. Dist. # 70*, 523 F.3d 730, 741 (7th Cir. 2008). To survive summary judgment on a retaliation theory, McKenzie must present evidence that would allow a reasonable juror to infer intentional discrimination based on her exercise of her FMLA rights. *Scruggs v. Carrier Corp.*, 688 F.3d 821, 827 (7th Cir. 2012).

McKenzie proceeds under the direct method of proof, which requires that she "provide evidence that (1) she engaged in activity protected by the FMLA, (2) her employer took an adverse employment action against her, and (3) the two were causally connected." *Malin v. Hospira, Inc.*, 762 F.3d 552, 562 (7th Cir. 2014). Taking FMLA leave is indisputably a statutorily protected activity. The parties agree that firing McKenzie is a materially adverse employment action. Accordingly, the central question at summary judgment is whether McKenzie has presented evidence that would permit a reasonable juror to conclude that Seneca would not have terminated her but for her FMLA leave.[3] Evidence of "suspicious timing and ambiguous statements," among other things, is sufficient to withstand summary judgment. *Malin*, 762 F.3d at 564 (quoting *Pagel v. TIN Inc.*, 695 F.3d 622, 631 (7th Cir. 2012)).

Here, McKenzie adduces evidence of a number of suspiciously timed events that would allow a reasonable juror to infer retaliatory intent. McKenzie accrued 9.5 points on December 13, 2013, which according to Seneca's attendance policy "will result in the

---

[3] It is unclear whether to prove causation a plaintiff must show merely that the FMLA-protected activity "was a substantial or motivating factor in the employer's decision," *Goelzer v. Sheboygan County*, 604 F.3d 987, 995 (7th Cir. 2010) (quoting *Lewis*, 523 F.3d at 741-42), or that the FMLA-protected activity was the but-for cause of the employer's decision. *Malin*, 762 F.3d at 562 n.3. But, just as in *Malin*, the court need not resolve the question of whether but-for causation applies to FMLA retaliation claims, because summary judgment would be inappropriate even under the higher but-for causation standard.

employee's employment with Seneca Foods being terminated for excessive absenteeism." Dkt. 21-1, at 1. But Seneca did not immediately terminate McKenzie. McKenzie continued to work at Seneca, without any warning regarding attendance, for more than a month. It was not until January 24, 2014 (shortly after McKenzie took an approved FMLA leave day on January 21) that Seneca notified McKenzie that her September 25 and December 13 absences were not approved as FMLA leave. McKenzie took another approved day of FMLA leave on January 25. On January 28, Seneca told McKenzie that she had accumulated 9.5 points and suspended her pending further investigation of her absences. McKenzie could have avoided termination if her absences on August 25 and September 25 had been classified as FMLA leave, but Seneca refused to reclassify those absences even though Unum retroactively approved them for FMLA leave. Two days later, Seneca fired McKenzie. Seneca's refusal to reclassify McKenzie's August 25 and September 25 absences becomes even more suspect when one considers that Seneca previously reclassified McKenzie's August 6 absence to FMLA leave after McKenzie notified Unum in October, and that Seneca's human resources manager could not remember another time in the past six years when Seneca denied FMLA leave to an employee after Unum approved it. Viewing all of these facts in the light most favorable to McKenzie, a reasonable juror could find that Seneca would not have fired McKenzie but for her taking FMLA leave. The court will deny Seneca's motion for summary judgment on the FMLA retaliation claim.

## C.  ADA claim

McKenzie also claims that Seneca failed to accommodate her disability, in violation of the ADA.

The ADA requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A). "[T]o establish a prima facie case of failure to accommodate under the ADA, 'a plaintiff must show that: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability.'" *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176 (7th Cir. 2013) (quoting *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 747-48 (7th Cir. 2011)), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). For purposes of summary judgment, Seneca does not dispute the first two elements, although it is far from clear that Lyme disease is a disability under the ADA. *See Worster v. Carlson Wagon Lit Travel, Inc.*, 353 F. Supp. 2d 257, 267, 269 (D. Conn. 2005) (noting that it "is questionable" whether Lyme disease qualifies as a disability under the Connecticut Fair Employment Practices Act, which "has a far broader definition of 'disabled' than the ADA"). So the central question on summary judgment is whether Seneca failed to reasonably accommodate McKenzie's disability.

To prove that Seneca failed to reasonably accommodate McKenzie's disability, McKenzie must first show "that a reasonable accommodation existed." *Mays v. Principi*, 301 F.3d 866, 870 (7th Cir. 2002), *abrogated on other grounds by EEOC v. United Airlines, Inc.*, 693 F.3d 760 (7th Cir. 2012). Reasonable accommodations are "[m]odifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges

of employment as are enjoyed by its other similarly situated employees without disabilities."
29 C.F.R. § 1630.2(o)(iii).

McKenzie identifies two accommodations that she contends would have been reasonable. First, she argues that allowing her to use "intermittent leave for her medical-related absences, absences which had been approved by Unum weeks after she had notified Seneca of her intent to use medical leave" would have been a reasonable accommodation. Dkt. 13, at 20. Second, she argues that allowing her an exemption from Seneca's attendance policy would have been a reasonable accommodation. In other words, she suggests that (1) Seneca should have modified its procedural FMLA reporting requirements to allow McKenzie to take FMLA leave without notifying Unum, or at least without notifying Unum right away; or (2) Seneca should have waived its procedural FMLA reporting requirements entirely.

McKenzie fails to adduce evidence that either accommodation would have been reasonable, because she makes no showing that Seneca's existing policies imposed any impediment to her enjoyment of the same benefits and privileges of employment as her co-workers. McKenzie could take intermittent FMLA leave simply by following Seneca's procedures. She does not allege that she was unable to follow those procedures because of her disability. To the contrary, she *did* follow those procedures many times and received approved FMLA leave as a result. Nor does she show that she could not comply with Seneca's policies concerning the number of unexcused absences. The ADA is a poor fit for McKenzie's situation because Seneca's FMLA policy offered all the accommodation that McKenzie needed; she failed to take advantage of it. The court will grant summary judgment in favor of Seneca on McKenzie's ADA claim.

14

One final point. Seneca argues that McKenzie is not entitled to an award of punitive damages on any of her discrimination claims. McKenzie offers no argument that she is entitled to punitive damages, so the court will grant summary judgment in Seneca's favor on this issue.

ORDER

IT IS ORDERED that defendant Seneca Foods Corporation's motion for summary judgment, Dkt. 8, is GRANTED as to plaintiff Afton McKenzie's failure to accommodate and interference claims and request for punitive damages and DENIED as to plaintiff's retaliation claim.

Entered March 27, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

15